1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                      **FOR THE DISTRICT OF ARIZONA**

8

9    Ray Jones,                                No. CV-24-00618-PHX-DGC

10                    Plaintiff,               **ORDER**

11   v.

12   Asurint Incorporated, et al.,

13                    Defendants.

14

15         Plaintiff Ray Jones asserts claims for violation of the Fair Credit Reporting Act

16   ("FCRA") against Defendant Trans Papa Logistics, Inc. ("TPL"). Doc. 1. TPL moves for

17   summary judgement. Doc. 63. The motion is fully briefed and the Court heard oral

18   argument on July 10, 2025. For the reasons stated below, the Court will deny the motion.

19   **I.    Background.**

20         On January 30, 2023, Plaintiff applied to work as a truck driver for TPL. Doc. 64

21   ¶ 8. There was one open position. *Id.* ¶ 9. Mike Doucet, TPL'S Hiring Manager,

22   interviewed Plaintiff the same day. *Id.* ¶ 10. Following the interview, Plaintiff was given

23   a contingent offer of employment which stated that he "may be asked to complete further

24   hiring paperwork, take a DOT pre-employment drug test and physical, Physical Demand

25   Test, complete road test, attend initiation orientation or other basic hiring procedures."

26   Doc. 64-3 at 106. Plaintiff signed the offer and TPL's Pre-Compliance Specialist,

27   Samantha Langevin, ordered a criminal background check through Asurint Incorporated,

28   a former Defendant in this case. *Id.*; Doc. 64 ¶ 15. On the same day – January 30 – Asurint

emailed Plaintiff a copy of his background report with a summary of his rights under the FCRA, including his right to dispute the report's contents. *Id.* ¶ 16. Plaintiff immediately contacted Asurint to dispute the report's inclusion of criminal records from earlier in his life that had since been expunged. *Id.* ¶ 18. On January 31, 2023, Asurint emailed Plaintiff to tell him it would investigate the dispute, and informed TPL that a dispute had been submitted by Plaintiff and would be investigated. *Id.* ¶ 19-20. Asurint did not tell TPL the nature of the dispute. Doc. 67 at 11.

On February 2, 2023, TPL's HR Specialist, Adriane Ireland, contacted Asurint and asked that Plaintiff's dispute be closed so she could adjudicate his report. Doc. 64 ¶ 23. Asurint told Ireland that the dispute was still under review, the company had 30 days to complete the review, and TPL would be notified once Plaintiff's report was final. *Id.* ¶ 26.

On February 3, 2023, Jonathan Kirkpatrick applied for the same job as Plaintiff. *Id.* ¶ 31. On February 6, 2023, Kirkpatrick interviewed for the position and given a contingent offer of employment with the same conditions as Plaintiff's offer. Doc. 64 ¶ 35. TPL ordered a background check on Kirkpatrick at 7:28 a.m. that day, which was issued at 9:10 a.m. Doc. 64-3 at 154. He received a physical examination the same day at 2:17 p.m. Doc 64-3 at 161.

Asurint finished reviewing Plaintiff's dispute on the same day as Kirkpatrick's interview, offer, and physical, and provided a final report to TPL at 3:37 p.m. that excluded Plaintiff's expunged criminal record. Docs. 64 ¶ 32, Doc. 64-3 at 146. Ireland reviewed the report and scored it as a "Pass" at 3:54 p.m. Doc. 64-3 at 146.

Kirkpatrick completed a drug test the next day, February 7, 2023. Doc. 64-3 at 167. TPL received the results on February 8, 2023. *Id.* The same day, Doucet texted Plaintiff and asked him to send his 1099 Forms for the three preceding years. *Id.* at 172. On February 9, 2023, Kirkpatrick completed his road test and was hired for the one open position. *Id.* at 182; Doc. 64 ¶ 41.

On February 13, 2023, Plaintiff asked Doucet if he could be scheduled for a physical, and Doucet responded that TPL had implemented a "hiring pause." Doc. 64-3 at

174.  Doucet said he would reach out to Plaintiff when he was able to start hiring again. *Id.*  On June 8, 2023, Doucet texted Plaintiff that he was going to start interviewing and Plaintiff should reapply.  *Id.* at 178.  Plaintiff reapplied the same day.  *Id.* 178-79.  He also applied for a job with Estes Express Lanes and, on July 13, 2023, began working for Estes. *Id.* at 56, 60.

Plaintiff's complaint alleges that TPL failed to provide him with a copy of his background check report and a description of his rights under the FCRA before taking adverse action based on the report, in violation of 15 U.S.C. § 1681b(b)(3).  Doc. 1 ¶¶ 40-49.  TPL moves for summary judgment, arguing that (1) Plaintiff released TPL from liability when he settled with Asurint; (2) TPL did not take an adverse action against Plaintiff that would trigger the FCRA requirements; and (3) even if § 1681b(b)(3) applies, Plaintiff does not have standing because he suffered no concrete harm.  Doc. 63.

## II.   Summary Judgment Standard.

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court must construe the evidence in favor of the nonmoving party and draw justifiable inferences in its favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.  Discussion.

### A.   Did Plaintiff Release TPL in the Asurint Settlement?

Plaintiff sued Asurint in this case, but entered a settlement agreement with Asurint that resulted in its dismissal several months ago.  Docs. 56-57.  TPL now argues that the settlement agreement released more than Plaintiff's claims against Asurint – that it also released Plaintiff's claims against TPL.  The Court does not agree.

1      The settlement agreement includes this language:

2          In consideration for the promises set forth in this Agreement, [Plaintiff and
3          his heirs] release, acquit, and forever discharge Asurint and all of its current
           and former affiliates, subsidiary and parent entities, and its and their owners,
4          officers, directors, servants, agents, **customers**, vendors, employees and
           former employees, insurers, reinsurers, contractors, representatives, and
5          attorneys past, present and future . . . from any and all . . . claims and causes
6          of action related to or any way growing out of Asurint's issuance of any
           consumer report(s) whatsoever about [Plaintiff].

7

8   Doc. 67 at 4-5 (emphasis added).  TPL argues that it is a customer of Asurint and therefore

9   was released by this language.  Doc. 63 at 6.  TPL, however, is not a party to and did not

10  sign the settlement agreement.  Doc. 67 at 2, 9.  For TPL to receive the benefit of the

11  settlement agreement's release, it must be a third-party beneficiary.

12      The settlement agreement is governed by Arizona law (*id.* at 8), and Arizona law

13  includes stringent requirements for third-party beneficiaries:

14         For a person to recover as a third-party beneficiary in Arizona, the
15         contracting parties must intend to directly benefit that person and must
           indicate that intention in the contract itself.  In addition, the third person must
16         be the real promisee.  The promise must be made to him in fact . . . and it is
           not enough that the contract may operate to his benefit but it must appear that
17         the parties intended to recognize him as the *primary* party in interest and as
18         privy to the promise.

19

20  *Sherman v. First Am. Title Ins. Co.*, 38 P.3d 1229, 1232 (Ariz. Ct. App. 2002) (cleaned up;

21  emphasis in original); *see also Nahom v. Blue Cross & Blue Shield of Arizona, Inc.*, 885

22  P.2d 1113, 1117 (Ariz. Ct. App. 1994) (same); *Norton v. First Federal Savings*, 624 P.2d

23  854, 856 (Ariz. 1981) (same).

24      TPL clearly is not a third-party beneficiary under this demanding standard.  The

25  settlement agreement contains no suggestion that TPL, a co-defendant in the very lawsuit

26  that was being settled against Asurint, was an intended beneficiary, the real promisee, or

27  the primary party in interest of the agreement.  *Sherman*, 38 P.3d at 1232.  And it would

28

have made no sense for Plaintiff to intentionally release claims against Defendant TPL, in a settlement with Defendant Asurint, without saying so.

TPL does not dispute this interpretation of the settlement agreement. Instead, it argues that Arizona's third-party beneficiary doctrine does not apply to persons claiming the benefit of a contract's claim release – the doctrine applies only to persons suing under the contract. Doc. 70 at 5. TPL cites no authority for this novel argument, and the Court is aware of none.

### B.    Adverse Action by TPL.

The FCRA section at issue in this case reads as follows:

> [I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—

> (i) a copy of the report; and

> (ii) a description in writing of the rights of the consumer under this subchapter . . .

15 U.S.C. § 1681b(b)(3)(A).

Plaintiff alleges that TPL received the initial report from Asurint that included his expunged criminal record, decided not to hire him in light of the report, and yet failed to provide him with a copy of the report or a notice of his right to dispute the report's content as required by this provision of the FCRA. Doc. 68 at 5. TPL does not dispute that it failed to provide Plaintiff with a copy of the report or a description of his rights, but contends it was not required to do so under this provision because it took no "adverse action" against him. Doc. 63 at 7.

TPL states that it did not make any decision based on the preliminary report, and ultimately marked the revised report as a "Pass." *Id.* It contends Plaintiff was not hired for the driver position because he failed to complete the necessary additional steps required

by his contingent offer – a drug test, physical, and driving test.  *Id.*  In the meantime, TPL hired Kirkpatrick for the only available job because he did complete these steps.  *Id.*

Plaintiff has presented sufficient evidence to raise genuine questions of fact about TPL's arguments.  He disputes that TPL's failure to hire him was based on his failure to complete the various required tests. Doc. 68 at 5-6.  He argues that TPL assumed responsibility for scheduling those tests and never did so in his case.  *Id.*  In support, Plaintiff points to an internal TPL hiring flowchart which states that the TPL transportation manager was to "Send" Plaintiff to a clinic for a physical and drug screen and was to "Conduct" Plaintiff's driving test. Doc. 69-2 at 3.  Plaintiff's contingent offer letter from TPL also stated that Plaintiff "may be asked" to complete these various tests, not that he was required to complete them on his own. Doc. 64-3 at 106. Consistent with this understanding, Plaintiff reached out to TPL on February 13, 2023 and asked if he could be scheduled for a physical.  Doc. 64-3 at 174.

This evidence supports Plaintiff's claim that it was TPL, not Plaintiff, who failed to schedule the tests required to complete his hiring.  By contrast, Kirkpatrick, who applied after Plaintiff but received an immediate and clean background report, completed these steps in short order and was hired for the job Plaintiff was seeking.

The sequence of relevant events could also be viewed by the jury as supporting Plaintiff's claim.  TPL received Plaintiff's corrected report on February 6, 2023 at 3:37 p.m. and scored it as a "Pass" at 3:54 p.m. Doc. 64-3 at 146.  At that moment, Kirkpatrick had not been hired; he had received only a physical examination.  Doc 64-3 at 146, 161. Kirkpatrick's job offer, like Plaintiff's, was still contingent on completing the other hiring requirements.  Doc. 64-3 at 152.  Over the next few days, during which Plaintiff heard nothing from TPL about scheduling any tests, Kirkpatrick was sent for drug and road tests and was hired.  Doc. 64-3 at 167, 182; Doc. 64 ¶ 41.  At trial, a jury reasonably could conclude that TPL chose to hire Kirkpatrick instead of Plaintiff based on their differing initial background checks.  TPL has identified no other factors that favored Kirkpatrick over Plaintiff.  Plaintiff also argues that Ireland's request on February 2, 2023 that Asurint

close the dispute about his background report – which Ireland said she had never done before (Doc. 69-2 at 70-71) – shows that TPL had decided not to hire him based on the initial and incorrect background check.

Construing this evidence in the light most favorable to Plaintiff, the Court finds a genuine issue of fact about why TPL did not hire Plaintiff. A jury reasonably could conclude that the difference between Plaintiff and Kirkpatrick was Plaintiff's initial unfavorable background report. The Court cannot grant summary judgment on this ground.

### C.    Article III Standing.

In a footnote to its initial motion for summary judgment, TPL suggested that Plaintiff lacks standing to pursue his claims. Doc. 63 at 8 n.1. The footnote included a one-sentence assertion and some case citations, but did not say that the lack of standing was a basis for its summary judgment request. In its reply brief, however, TPL made standing its primary argument. Doc. 70 at 1-3. In fairness, the Court allowed Plaintiff to file a further reply to this newly emphasized argument. Docs. 71, 74-75.

TPL argues that Plaintiff received a copy of his initial background report and an explanation of his FCRA rights from Asurint – the very things TPL was required to provide Plaintiff under § 1682b(b)(3)(A). Doc. 70 at 3. TPL notes that Plaintiff immediately invoked his rights and contacted Asurint to dispute the report's accuracy. *Id.* at 4. As a result, TPL argues, Plaintiff suffered no injury from TPL's failure to provide the same documents, and this case presents nothing more than a procedural violation of the FRCA that does not establish standing to sue. Doc. 61 at 8 n.1; Doc. 70 at 3.

Plaintiff argues that there has been more than procedural error. Because TPL failed to provide the documents required by the FCRA before an adverse action is taken, Plaintiff had no way of knowing an adverse action was contemplated (or even that TPL had access to the incorrect background check) and therefore was deprived of the opportunity to inform TPL of the expungement of his criminal record before it decided not to hire him. Doc. 74 at 3. Asurint's providing Plaintiff with the background report and a description of his FCRA rights suggested nothing about TPL's intent to take adverse action. *Id.*

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of L.A. v. Lyons*, 461 U.S. 95, 101 (1983). A plaintiff has standing if he (1) "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). To be particularized, an injury "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). To be concrete, an injury "must be 'de facto'; that is, it must actually exist." *Id.* at 340. The Supreme Court has made clear that "Article III standing requires a concrete injury even in the context of a statutory violation," and a Plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm." *Id.* at 341.

The Ninth Circuit has established a two-step test for assessing whether a plaintiff has shown a concrete harm sufficient to assert a claim under the FCRA. First, the court asks "whether the statutory provisions were established to protect a plaintiff's concrete interests (as opposed to purely procedural rights)." *Robins v. Spokeo, Inc*., 867 F.3d 1108, 1113 (9th Cir. 2017). If the answer is yes, it then asks "whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Id.*

Plaintiff satisfies the first prong. The complaint alleges violations of an FCRA provision intended to ensure accurate reporting of consumer information. *Tailford v. Experian Info. Sols.*, *Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022) (discussing the purposes of the FCRA). Courts have found that 15 U.S.C. § 1681b(b)(3) protects more than freedom from adverse action based on an inaccurate report. *Magallon v. Robert Half Int'l, Inc*., No. 6:13-CV-1478-SI, 2024 WL 4182846, at *7-8 (D. Or. Sept. 13, 2024) (collecting cases from other circuits). It also protects "the concrete interests of, among others, accuracy, relevancy, proper use, and fairness in the reporting of consumer information." *Id.* at *8.

Thus, Courts have held that plaintiffs are entitled to receive their report and information from a prospective employer in order to "bring additional facts to the employer's attention that put matters in a better light[.]" *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 696 (7th Cir. 2018).

Plaintiff satisfies the second prong by presenting evidence from which a reasonable jury could find that concrete harm resulted from the FCRA violation. An informational violation like this must have downstream adverse effects for there to be an actual injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 441-42 (2021). Plaintiff alleges that TPL's failure to comply with § 1681b(b)(3)(A) deprived him of notice that TPL intended to take adverse action against him. Doc. 74 at 3. If he had notice, Plaintiff contends, he would have sought to address the report's inaccuracy with TPL and provide the same expungement information he provided Asurint. *Id.*

As noted above, Plaintiff has provided evidence from which a reasonable jury could find that TPL rescinded Plaintiff's offer because of the criminal history information contained in the initial background report. TPL does not claim that Plaintiff's criminal history would have disqualified him in any event – that even an expunged criminal history would have prevented his hire. It argues that the expunged criminal history did not disqualify him. Doc. 63 at 8. If a jury finds TPL rescinded its offer because of what was in the inaccurate initial report, it could also find that Plaintiff's early explanation of the errors to TPL would have resulted in his receiving the job he was offered.[1]

The Ninth Circuit has held that § 1681b(b)(3)(A) does not create a *statutory obligation* for an employer to hear and consider a prospective employee's explanation of an adverse background report. *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1094 (9th Cir. 2020). But there is a difference between an employer being obligated by the FCRA to hear

---

[1] In response to a summary judgment motion based on lack of standing, a plaintiff must provide specific facts that would support standing if accepted by the jury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 747 (9th Cir. 2012) (if there is a genuine issue of material fact on standing, summary judgment is inappropriate). As noted above, Plaintiff has produced sufficient facts from which a jury could find that TPL declined to hire him because of what was in his initial background report.

such explanations, and an employer choosing to do so when approached by a prospective employee. TPL does not assert that it would have declined to hear Plaintiff's explanation of his expunged criminal history, and other Ninth Circuit cases have suggested that the loss of such an explanation opportunity is enough to constitute concrete harm. In *Dutta v. State Farm Mut. Auto. Ins. Co*., 895 F.3d 1166 (9th Cir. 2018), the Court of Appeals explained that "§ 1681b(b)(3) protects a job applicant's interest in curbing the dissemination of false information in a manner that could cause harm to employment prospects." *Id.* at 1174-75. This section of the FCRA "thereby gives a job applicant a procedural protection that is akin to pre-deprivation due process: notice and the opportunity to contest erroneous information in a credit report before the prospective employer takes an adverse action based on such information." *Id.* at 1175. "This interest in ensuring that employment determinations are not affected by incorrect credit information is real and not purely procedural." *Id.* (citation omitted).

The Ninth Circuit found in *Dutta*, however, that the prospective employee's further explanations to the employer would have made no difference – he still would have been ineligible for employment. As a result, his inability to make such an explanation caused no concrete harm. *Id.* at 1176 ("The Beasley Declaration makes clear that the existence of the charge off within the 24-month ACT look back period alone disqualified Dutta from continuing in the ACT program. That fact made all of the inaccuracies or explanations Dutta wanted to present to State Farm immaterial.").

Similar undisputed facts do not exist here. As already noted, TPL does not argue that Plaintiff's expunged criminal history made him ineligible for employment. To the contrary, TPL argues he was eligible. Nor does TPL claim it would have refused to hear his explanation. As a result, a reasonable jury could find that Plaintiff lost his employment opportunity when he was deprived of a chance to explain his expunged record, a clearly concrete harm. TPL is not entitled to summary judgment on standing grounds.

**IT IS ORDERED:**

1.      Defendant TPL's motion for summary judgment (Doc. 63) is **denied**.

2.     The Court will set a telephone conference by separate order.

Dated this 4th day of August, 2025.

David G. Campbell
Senior United States District Judge